## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **TAMMY JEANEASE REEVES,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:17-cv-1944-MHH** |
| | } | |
| **ANDREW SAUL, Commissioner of** | } | |
| **the Social Security Administration,**[1] | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), Tammy Jeanease Reeves seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Reeves's claims for disability insurance benefits and supplemental security income.  Ms. Reeves also has moved to remand.  (Doc. 12). For the reasons stated below, the Court denies Ms. Reeves's motion and affirms the Commissioner's decision.

---

[1] The Court asks the Clerk to please substitute Andrew Saul for Nancy A. Berryhill as the proper defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 25(d) (When a public officer ceases holding office that "officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

# I.  PROCEDURAL HISTORY

Ms. Reeves applied for disability, disability insurance benefits, and supplemental security income.  (Doc. 6-3, p. 11; Doc. 6-4, pp. 22, 23).  Ms. Reeves alleges that her disability began August 15, 2014.  (Doc. 6-3, p. 11; Doc. 6-4, pp. 21, 23).  She was working at the time, but her work "did not rise to the level of substantial gainful activity."  (Doc. 6-3, p. 13).  The Commissioner initially denied Ms. Reeves's claim.  (Doc. 6-3, p. 11; Doc. 6-4, p. 22, ¶ 19; Doc. 6-4, p. 23, ¶ 19).  Ms. Reeves requested a hearing before an Administrative Law Judge (ALJ).  (Doc. 6-3, p. 11; Doc. 6-5, p. 11).  The ALJ issued an unfavorable decision.  (Doc. 6-3, pp. 11, 23-24).  The Appeals Council declined Ms. Reeves's request for review (Doc. 6-3, p. 2), making the Commissioner's decision final for this Court's judicial review.  *See* 42 U.S.C. § 405(g).

Ms. Reeves previously applied for benefits and claimed disability beginning on April 1, 2011.  (Doc. 6-3, p. 40).  Another ALJ determined on a record substantially similar to the record in this case that Ms. Reeves was not disabled.  (Doc. 6-3, p. 21).  That previous ALJ found that Ms. Reeves's pain testimony was inconsistent with her pain reports to physicians.  Those reports never exceeded five on a ten-point scale.  In addition, there was no information in Ms. Reeves's medical records to confirm her complaints of side effects from her medication.  (Doc. 6-3, pp. 50-51).  The district court affirmed that ALJ's decision.  *Reeves v. Colvin* (*Reeves*

*I*), No. 4:14-CV-01970-RDP, 2016 WL 778029 (N.D. Ala. Feb. 29, 2016); (Doc. 6-3, pp. 39-54). The Court discusses below the significance of this earlier determination as it pertains to Ms. Reeves's current appeal.

## II.    STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r, Soc. Sec. Admin.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r, Soc. Sec. Admin.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence" or substitute its judgment for that of the ALJ. *Winschel v. Comm'r, Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If the ALJ's decision is supported by substantial evidence, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Reeves meets the insured status requirements through June 30, 2016. (Doc. 6-3, p. 11). Ms. Reeves has not engaged in substantial gainful activity since August 15, 2014, the alleged onset date. (Doc. 6-3, p. 13). The ALJ determined that Ms. Reeves suffers from the following severe impairments: degenerative disc disease, degenerative joint disease, obesity, and

4

depression. (Doc. 6-3, p. 13). The ALJ found that Ms. Reeves suffers from the following non-severe impairments: gastroesophageal reflux disease, anxiety, and hypertension. (Doc. 6-3, p. 14). Based on a review of the medical evidence, the ALJ found that Ms. Reeves does not have an impairment or a combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 6-3, p. 14).

The ALJ determined that Ms. Reeves has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a) subject to the following limitations:

> no following complex instructions or procedures; no climbing ropes, ladders, or scaffolds; no working at unprotected heights or with hazardous machinery; occasionally stooping, crouching balancing, crawling, kneeling, and climbing of ramps or stairs; no interacting frequently with co-workers, supervisors, and the general public; occasionally using foot controls bilaterally; and avoiding concentrated exposure to extreme heat, cold, or vibrations.

(Doc. 6-3, p. 17). "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a). "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a).

The ALJ concluded that Ms. Reeves cannot perform her past relevant work. (Doc. 6-3, p. 22). Relying on testimony from a vocational expert, the ALJ found

that other jobs exist in the national economy that Ms. Reeves can perform, including surveillance system monitor, cuff folder, and lens inserter. (Doc. 6-3, p. 23). Accordingly, the ALJ determined that Ms. Reeves has not been under a disability within the meaning of the Social Security Act. (Doc. 6-3, pp. 23-24).

## IV.   ANALYSIS

### A.  Motion to Remand

Pursuant to 42 U.S.C. § 405(g)'s sentences four and six, Ms. Reeves asks the Court to remand this matter so that the ALJ may consider a favorable decision on her most recent benefits application and a January 2018 medical source statement. (Doc. 12; Docs. 12-1, 12-2). "Under sentence four, a district court may remand in conjunction with a judgment affirming, modifying, or reversing the Secretary's decision." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Ms. Reeves asks the Court to remand before reaching a substantive decision, so sentence four does not provide a vehicle for remand. 501 U.S. at 98.

A district court may remand under § 405(g)'s sentence six if a claimant offers "new, noncumulative evidence . . . [that] is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result[.]" *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). Additionally, a claimant must demonstrate "good cause for the failure to submit the evidence at the administrative level." *Caulder*, 791 F.2d at 877.

In *Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015), the Eleventh Circuit Court of Appeals held that a favorable decision on a subsequent benefits application "is not evidence for § 405(g) purposes." The Eleventh Circuit reasoned:

> Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate. The mere existence of a later favorable decision by one ALJ does not undermine the validity of another ALJ's earlier unfavorable decision or the factfindings upon which it was premised.

*Hunter*, 808 F.3d at 822. Consequently, Ms. Reeves cannot rely on her recent favorable determination to support a sentence six remand.

A new consultative report may warrant a sentence six remand if it meets the *Caulder* requirements. (Doc. 14, pp. 6, 7). The report that Ms. Reeves offers, Dr. Oguntuyo's 2018 report, does not indicate that Ms. Reeves's functional impairments existed prior to the ALJ's 2017 determination in this case. *See Watts ex rel. A.W. v. Comm'r, Soc. Sec. Admin.*, No. 4:11-CV-02625-RDP, 2012 WL 2358160, at *3 (N.D. Ala. June 15, 2012) (denying motion to remand because the new evidence did not relate to the disability period that the ALJ considered); *cf. Caulder*, 791 F.2d at 877-78 ("The [new] evidence also contains a medical opinion on the presence of the

impairment during the time period for which benefits are sought.").[2]  Because Dr. Oguntuyo's report does not provide information that establishes a reasonability probability of a different administrative result, it does not warrant remand.

## B.  The Appeal

Ms. Reeves argues that she is entitled to relief from the ALJ's decision because the ALJ did not properly evaluate the side effects of her pain medication under the Eleventh Circuit pain standard or provide reasons for discrediting the consultative opinions of Dr. Daniel Prince and Dr. Jane Teschner.  (Doc. 9, p. 2). Additionally, Ms. Reeves maintains that the ALJ did not pose an accurate hypothetical question to the vocational expert.  (Doc. 9, pp. 2, 35).  This Court affirms because substantial evidence supports the ALJ's decision that Ms. Reeves is not disabled.  The Court begins its analysis with the side effects issue.

### Side Effects

The Eleventh Circuit pain standard "applies when a disability claimant attempts to establish disability through his own testimony of pain or other subjective symptoms."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Coley v. Comm'r, Soc. Sec. Admin.*, No. 18-11954, 2019 WL 1975989, at *3 (11th Cir. May

---

[2] Dr. Oguntuyo indicated that Ms. Reeves's condition was worsening, that she needed a rolling walker, and that she had a positive right leg raise.  (Doc. 12-2, pp. 1-3).  During the relevant time period in this case, Ms. Reeves's most recent leg raise was negative (Dr. Iyer), and she was using a cane by choice, not by prescription.  (Doc. 6-10, p. 101; Doc. 6-3, p. 86).  Examiners use the straight leg raise test to evaluate patients "with low back pain and nerve pain that radiates down the leg."  https://www.ebmconsult.com/articles/straight-leg-raising-test (last visited Aug. 9, 2019).

3, 2019). When relying upon subjective symptoms to establish disability, "the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged [symptoms]; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed [symptoms]." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt*, 921 F.2d at 1223); *Chatham v. Comm'r, Soc. Sec. Admin.*, No. 18-11708, 2019 WL 1758438, at *2 (11th Cir. Apr. 18, 2019) (citing *Wilson*). If the ALJ does not demonstrate "proper application of the three-part standard[,]" reversal is appropriate. *McLain v. Comm'r, Soc. Sec. Admin.*, 676 Fed. Appx. 935, 937 (11th Cir. 2017) (citing *Holt*).

A claimant's credible testimony coupled with medical evidence of an impairing condition "is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223; *see Gombash v. Comm'r, Soc. Sec. Admin.*, 566 Fed. Appx. 857, 859 (11th Cir. 2014) ("A claimant may establish that he has a disability 'through his own testimony of pain or other subjective symptoms.'") (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). If an ALJ rejects a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson,* 284 F.3d at 1225; *Coley*, 2019 WL 1975989, at *3. The Secretary must accept the claimant's testimony as a matter of law if the ALJ inadequately discredits

the testimony. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *Kalishek v. Comm'r, Soc. Sec. Admin.*, 470 Fed. Appx. 868, 871 (11th Cir. 2012) (citing *Cannon*); *see Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987) ("It is established in this circuit if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.").

When credibility is at issue, the provisions of Social Security Regulation 16-3p apply. SSR 16-3p provides:

> [W]e recognize that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence. In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2016 WL 1119029, at *4. Concerning the ALJ's burden when discrediting a claimant's subjective symptoms, SSR 16-3p provides:

> [I]t is not sufficient . . . to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough . . . simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the

individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *10. Additionally, when evaluating a claimant's reported symptoms, an ALJ must consider the following factors:

> (i) [the claimant's] daily activities; (ii) [t]he location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) [t]he type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms; (v) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms; (vi) [a]ny measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Leiter v. Comm'r, Soc. Sec. Admin.*, 377 Fed. Appx. 944, 947 (11th Cir. 2010).

With these standards in mind, the Court turns to Ms. Reeves's testimony at her administrative hearing. During her hearing, Ms. Reeves was 43 years old. (Doc. 6-3, p. 80). She stated that she attended school through the ninth grade. (Doc. 6-3, p. 80). Ms. Reeves testified that she is five feet and nine inches tall, and she stated that she weighed 360 pounds. (Doc. 6-3, p. 91).

Ms. Reeves reported that she had back surgery in 2007. (Doc. 6-3, p. 88). Ms. Reeves returned to work and felt good during the first year following surgery. (Doc. 6-3, p. 88). When Ms. Reeves "started having little problems here and there"

with her back, she changed jobs to reduce her pain, but that did not help. (Doc. 6-3, p. 88).

Ms. Reeves testified that she has "several different things going on in [her] back." (Doc. 6-3, p. 82). Ms. Reeves stated that her back condition makes it "hard for [her] to stay on [her] feet for a very long period of time." (Doc. 6-3, p. 82). Ms. Reeves reported that she can stand for 30 minutes, "but by then, [she] is really hurting." (Doc. 6-3, p. 87). Ms. Reeves stated that it hurts if she sits for too long, so she constantly moves up and down. (Doc. 6-3, p. 82). Ms. Reeves stated that she can sit for an hour. (Doc. 6-3, p. 88). Ms. Reeves testified that she elevates her feet when sitting because of severe edema. (Doc. 6-3, p. 82). Ms. Reeves reported that she can pick up a ten-pound bag of potatoes from the floor, but the activity makes her back hurt. (Doc. 6-3, p. 88). Ms. Reeves stated she spent most of her day lying down or sitting with her legs elevated. (Doc. 6-3, p. 90).

Ms. Reeves testified that she was taking several medications: lisinopril HTZ for blood pressure; citalopram for anxiety and depression; amitriptyline for anxiety; gabapentin for nerve pain; diclofenac for inflammation; and Flexeril for pain. (Doc. 6-3, p. 83). Ms. Reeves stated that her medications caused "constant drowsiness and sometimes dizziness, especially . . . in the shower." (Doc. 6-3, p. 87). Ms. Reeves testified that she nods off regularly. (Doc. 6-3, p. 87). Ms. Reeves stated that she has discussed these side effects with her doctor. (Doc. 6-3, p. 87). According to Ms.

Reeves, her doctor explained "that's one of the things," which Ms. Reeves understood to mean "all medicines have good things and bad things and sometimes they rate the good over the bad." (Doc. 6-3, p. 87).

Ms. Reeves explained that she does "little things around the house." (Doc. 6-3, p. 83). Sweeping and mopping are too difficult, but she can clean dishes if she takes breaks. (Doc. 6-3, p. 83). Ms. Reeves stated that when doing dishes, she has "to lean on the sink . . . to hold [her] weight because it hurts." (Doc. 6-3, p. 90). Ms. Reeves reportedly is "up and down doing anything . . . because [she] can't be on [her] feet for too long a time without being in severe pain." (Doc. 6-3, p. 83). Ms. Reeves lives with her youngest son, her daughter-in-law, and her grandson. Ms. Reeves reported that she occasionally watches her grandson and drives to church once or twice weekly. (Doc. 6-3, pp. 83, 84).

Ms. Reeves testified that stiffness in her hip and back creates balance problems. (Doc. 6-3, p. 86); (*see* Doc. 6-3, p. 90) (referring to hip stiffness). According to Ms. Reeves, her son asked her to stay with his family because she falls frequently, and he was concerned about her being alone. (Doc. 6-3, pp. 85-86). Ms. Reeves explained that she tried using a cane for walking because she "was hurting so bad." (Doc. 6-3, p. 86). Ms. Reeves stated that the cane "kind of relieves a lot of the stress on [her] hip and [ ]back" and reduces some of the pain. (Doc. 6-3, p. 86).

On a scale of one to ten – with one being barely noticeable pain and ten being pain so severe a person would need to go to the emergency room – Ms. Reeves rated her pain at seven during the day.  (Doc. 6-3, pp. 88-89).  Ms. Reeves testified that her pain level sometimes increases to ten at night, which prevents her from sleeping and causes tiredness the following day.  (Doc. 6-3, p. 89).

Having heard and considered Ms. Reeves's testimony, the ALJ made the following credibility determination:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.  Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

(Doc. 6-3, p. 20).

The ALJ discussed Ms. Reeves's medical records, including a 2007 MRI that revealed "chronic spondylosis with associated degenerative disc disease . . . at L5-S1 . . . with a component of grade I L5-S1 listhesis [and] . . . . marked L5-S1 spinal stenosis."  (Doc. 6-3, p. 18); (*see also* Doc. 6-13, pp. 61-62) (results of MRI of lumbar spine).[3]  The ALJ acknowledged Ms. Reeves's efforts to manage her pain

---

[3] "[T]he phrase 'spondylosis of the lumbar spine' means degenerative changes such as osteoarthritis of the vertebral joints and degenerating intervertebral discs (degenerative disc disease) in the low back." https://www.emedicinehealth.com/spondylosis/article_em.htm (last

and depression through medications, including Naprosyn, Mobic (meloxicam), citalopram, Flexeril, and gabapentin.  (Doc. 6-3, p. 18); (*see also* Doc. 6-7, p. 66) (listing Ms. Reeves's current medications).[4]  The ALJ stated that there was a gap in Ms. Reeves's treatment records from 2011 to 2014.  (Doc. 6-3, p. 18).[5]  Based on

---

visited Aug. 9, 2019). "The word spondylolisthesis is derived from the Greek words *spondylo*, meaning spine, and *listhesis*, meaning to slip or slide.  Spondylolisthesis is a descriptive term referring to slippage (usually forward) of a vertebra and the spine above it relative to the vertebra below it." https://emedicine.medscape.com/article/396016-overview (last visited Aug. 9, 2019). Stenosis is "a narrowing of the spinal canal, compressing the nerves traveling through the lower back into the legs." https://www.aans.org/en/Patients/Neurosurgical-Conditions-and-Treatments/Lumbar-Spinal-Stenosis (last visited Aug. 9, 2019).

[4]  "Naprosyn (naproxen) is a nonsteroidal anti-inflammatory drug (NSAID)." https://www.drugs.com/naprosyn.html (last visited Aug. 9, 2019).  "Mobic (meloxicam) is a nonsteroidal anti-inflammatory drug (NSAID)" used to treat "inflammation, swelling, stiffness, and joint pain.  https://www.drugs.com/search.php?searchterm=Mobic&a=1 (last visited Aug. 9, 2019);  https://www.mayoclinic.org/drugs-supplements/meloxicam-oral-route/description/drg-20066928 (last visited Aug. 9, 2019). "Citalopram is used to treat depression." https://www.drugs.com/search.php?searchterm=citalopram (last visited Aug. 9, 2019).  "Flexeril (cyclobenzaprine) is a muscle relaxant."  https://www.drugs.com/search.php?searchterm=flexeril (last visited Aug. 9, 2019).  "[Gabapentin] affects chemicals and nerves in the body that are involved in the cause of seizures and some types of pain.") https://www.drugs.com/search.php?searchterm=Gabapentin (last visited Aug. 9, 2019).

[5] The ALJ cited B16F for the perceived gap.  If appears the ALJ overlooked the records at B8F, found in Doc. 6-10.  (*See, e.g.*, Doc. 6-10, p. 7) (chiefly visiting for a sore throat and ears aching in February 2012); (Doc. 6-10, p. 11) (chiefly visiting for hypertension and edema in April 2012); (Doc. 6-10, p. 16) (chiefly visiting for hypertension in May 2012); (Doc. 6-10, p. 20) (chiefly visiting for hypertension, anxiety, and bilateral hip, knee, and ankle fluctuating pain in July 2012); (Doc. 6-10, p. 24) (chiefly visiting for back pain worse on the right side and an arm rash in August 2012); (Doc. 6-10, p. 28 (chiefly visiting for fluctuating back pain with radiation to the right calf, foot, and thigh and no relief from medication in October 2012); (Doc. 6-10, p. 32) (chiefly visiting for hypertension, acid reflux, fluctuating back pain with relief from medications, and depression in January 2013); (Doc. 6-10, p. 37) (chiefly visiting for hypertension and urinary symptoms in February 2013); (Doc. 6-10, p. 41) (chiefly visiting for hypertension and edema in March 2013); (Doc. 6-10, p. 45) (chiefly visiting for hypertension and back pain in May 2013); (Doc. 6-10, p. 49) (chiefly visiting for hypertension and lower back and leg pain in September 2013 with relief from medications except Flexeril for muscle spasms in September 2013); (Doc. 6-10, p. 54) (chiefly visiting for hypertension, acid reflux, fluctuating lower back and leg pain with relief from medications, and depression in December 2013).  There also are a few records from the 2011 to

this review, the ALJ found that Ms. Reeves's medical records do not support her subjective description of her pain and limitations. (Doc. 6-3, pp. 18-19, 20).

The ALJ gave little weight to the opinion of Dr. Prince, a physician who examined Ms. Reeves one time in October 2012. (Doc. 6-3, p. 20; Doc. 6-9, p. 41). Dr. Prince concluded that Ms. Reeves suffers from significant back disc disease. (Doc. 6-9, p. 45). Dr. Prince reviewed Ms. Reeves's medical history and noted that Dr. Andrade performed a back laminectomy on Ms. Reeves in 2007. (Doc. 6-9, p. 45).[6] This surgery helped Ms. Reeves for one year. (Doc. 6-9, p. 45). After that, Ms. Reeves began having difficulty "standing for more than 10 minutes or so[.]" (Doc. 6-9, p. 45). Ms. Reeves's ability to stand worsened, and she developed pelvic, hip, and leg pain on the right side of her body. (Doc. 6-9, p. 45).

Dr. Prince opined that Ms. Reeves "is at a very high risk for falling." (Doc. 6-9, p. 41). Dr. Prince confirmed that Ms. Reeves has significant back problems. (Doc. 6-9, p. 41). He indicated that Ms. Reeves was "an extremely poor candidate

2014 window. (*See, e.g.*, Doc. 6-13, p. 12) (chiefly visiting for hypertension in March 2011); (Doc. 6-13, p. 15) (chiefly visiting for right knee and hip pain and hypertension in June 2011); (Doc. 6-13, p. 19) (chiefly visiting for right hip pain and hypertension in July 2011); (Doc. 6-13, p. 23) (chiefly visiting for back pain and hypertension in October 2011); (Doc. 6-10, p. 3) (chiefly visiting for fluctuating lower back pain with radiation to legs and thighs and hypertension in January 2012).

[6] A decompressive laminectomy "is the most common type of surgery done to treat lumbar (low back) spinal stenosis." https://www.uwhealth.org/health/topic/surgicaldetail/decompressive-laminectomy-for-lumbar-spinal-stenosis/aa122359.html (last visited Aug. 9, 2019).

for surgery" and "that another operation on the lumbar spine may only make matters worse." (Doc. 6-9, p. 41).

Dr. Prince stated on a physical capacities form that Ms. Reeves could sit no more than 30 minutes uninterrupted and stand and walk for no more than 15 minutes. (Doc. 6-9, p. 42). During an eight-hour period, Dr. Prince limited Ms. Reeves's ability to sit to three hours. (Doc. 6-9, p. 42). Dr. Prince restricted Ms. Reeves's total time for both standing and walking to no more than 45 minutes. (Doc. 6-9, p. 42). Dr. Prince found that Ms. Reeves is unable to lift or carry anything over 10 pounds. (Doc. 6-9, pp. 42, 43). Dr. Prince placed a complete or occasional limit on Ms. Reeves's ability to push/pull with her arms and hands and her legs and feet. (Doc. 6-9, p. 43). Dr. Prince precluded squatting and limited bending, crawling, climbing, and reaching to occasionally. (Doc. 6-9, p. 43). According to Dr. Prince, Ms. Reeves is able to use her hands occasionally for simple grasping, fine manipulation, fingering, and handling. (Doc. 6-9, p. 43). Dr. Prince found that Ms. Reeves should avoid jobs involving unprotected heights and moving machinery. (Doc. 6-9, p. 43). Dr. Prince limited Ms. Reeves's ability to drive automotive equipment to moderate. (Doc. 6-9, p. 43). Dr. Prince restricted Ms. Reeves's exposure to temperature changes to moderate and her exposure to dust, fumes, and gas to mild. (Doc. 6-9, p. 43).

The ALJ stated that the objective medical evidence did not corroborate the "significant functional limitations" that Dr. Prince identified for Ms. Reeves, but the ALJ did not offer specific examples. (Doc. 6-3, p. 20).

The ALJ discussed but gave little weight to the consultative opinion that Dr. Teschner provided in June 2013. (Doc. 6-3, pp. 20-21; Doc. 6-9, p. 49). Dr. Teschner summarized her review of Ms. Reeves's medical record. (Doc. 6-9, pp. 51-53). After considering the medical evidence and examining Ms. Reeves, Dr. Teschner made the following diagnoses: morbid obesity, chronic lumbar/spine pain, chronic right hip pain, chronic right knee pain, hypertension, anxiety, and depression. (Doc. 6-9, pp. 49, 56).

Dr. Teschner listed the objective sources of Ms. Reeves's pain including spine surgery, lumbar radiculopathy, spondylolisthesis, spinal stenosis, an annulus tear, dysplasia, cystic lesions, degenerative joint disease, and possible stress fracture. (Doc. 6-9, p. 56). Dr. Teschner found that Ms. Reeves needed total hip arthroplasty. (Doc. 6-9, p. 56). Dr. Teschner explained why, in her opinion, the medical evidence supported her assessment of Ms. Reeves:

> Throughout her records, [Ms. Reeves] has complained of symptoms mainly on the right side; and throughout her records she has exhibited a positive straight leg raise test by each doctor who examined her, including me. Her history, her physical, and her MRI from 2008 are consistent. Note that the lower lumbar foraminal stenosis is deemed severe; this finding signifies that there is marked impingement of the nerves as they exit from the spinal nerve root on the right. Her symptoms of right sided leg pain and numbness [are] consistent with

the degree of stenosis reflected on her MRI. She also has spinal stenosis, a condition that with movement in certain directions can cause intermittent impingement of the cord itself leading to excruciating lower back pain.

(Doc. 6-9, p. 57).

The ALJ rejected Dr. Teschner's opinion because Dr. Teschner "was asked to comment on specific areas on the previous disability determination," and "[h]er opinion that the previous [ALJ] was in error concerning [Ms. Reeves's] disability determination is reserved to the Commissioner." (Doc. 6-3, p. 21); 20 C.F.R. § 404.1527(e). The ALJ also found that the objective evidence did not support Dr. Teschner's opinion, (Doc. 6-3, p. 21), but the ALJ did not explain how Dr. Teschner's opinion was at odds with the medical evidence.

The ALJ gave the opinion of consultative examiner Dr. Iyer some weight. (Doc. 6-3, p. 21). Dr. Iyer examined Ms. Reeves in November 2014. (Doc. 6-10, p. 99). Dr. Iyer observed Ms. Reeves limping on her right leg. (Doc. 6-10, p. 100). Dr. Iyer reported that Ms. Reeves cannot walk on her heels or tiptoes or squat. (Doc. 6-10, p. 100). Dr. Iyer conducted a straight leg raise test and the result was negative. (Doc. 6-10, p. 101). Dr. Iyer noticed tenderness and discomfort when examining Ms. Reeves's hip right. (Doc. 6-10, p. 101). Dr. Iyer heard evidence of crepitus under Ms. Reeves's right and left knee caps and noticed that her right knee tends to

hyperextend. (Doc. 6-10, p. 101).[7] Dr. Iyer found that Ms. Reeves has full range of motion in both knees. (Doc. 6-10, p. 101). Dr. Iyer stated Ms. Reeves had not received treatment and noted that her medications included Celexa (20 mg daily for depression), Flexeril (10 mg three times daily to relax muscles), Gabapentin (300 mg three times daily for nerve pain), and Mobic (15 mg daily for chronic pain). (Doc. 6-10, pp. 99, 100).

Dr. Iyer concluded that Ms. Reeves could have an impaired ability to walk long distances, climb, squat, and bend. (Doc. 6-10, p. 102). Dr. Iyer placed no limitations on sitting, handling, hearing, or speaking. (Doc. 6-10, p. 102). The ALJ concluded that Dr. Iyer's opinion was consistent with Ms. Reeves's treatment records, (Doc. 6-3, p. 21), but the ALJ limited Dr. Iyer's opinion to "some weight" because Dr. Iyer "failed to quantify" Ms. Reeves's limitations. (Doc. 6-3, p. 21).

The ALJ acknowledged the physical capacities September 2016 form for Ms. Reeves that a certified registered nurse practitioner with Quality of Life Health Services completed. (Doc. 6-3, p. 21). The ALJ gave the opinion little weight because a nurse practitioner is not an acceptable medical source for the purposes of social security evaluations. (Doc. 6-3, p. 21). Mr. Rogers, the nurse practitioner, reported that Ms. Reeves was receiving treatment for back pain, depression, and

---

[7] Crepitus is "[a] clinical sign . . . characterized by a peculiar crackling, crinkly, or grating feeling or sound . . . in the joints. . . . Crepitus in a joint can indicate cartilage wear in the joint space." https://www.medicinenet.com/script/main/art.asp?articlekey=12061 (last visited Aug. 1, 2019).

anxiety in 2016.  (Doc. 6-11, p. 8).  Mr. Rogers indicated that Ms. Reeves was able to sit up to one hour and stand uninterrupted up to 30 minutes.  (Doc. 6-11, p. 8). Mr. Rogers expected Ms. Reeves to spend seven hours lying down, sleeping, or sitting with her legs propped up and to be off-task 90% of a normal workday due to her medical conditions.  (Doc. 6-11, p. 8).  Mr. Rogers stated that Ms. Reeves experienced drowsiness because of her medications.  (Doc. 6-11, p. 8).[8]  Dr. Tariq, a supervising physician at QOL, signed the physical capacities form, indicating his agreement with Mr. Rogers's assessment of Ms. Reeves.  (Doc. 6-14, p. 85).[9]

The ALJ found that the treatment notes from Quality of Life Health Services did not support Dr. Tariq's opinion.  (Doc. 6-3, p. 21).  The ALJ also discounted Dr. Tariq's opinion based on the ALJ's impression that Dr. Tariq (and Mr. Rogers) factored into their assessment of Ms. Reeves's physical limitations some of her mental health symptoms.  (Doc. 6-3, p. 21).

---

[8] The Commissioner argues that, "the medical records from after Plaintiff's alleged onset date of August 15, 2014, do not indicate that she complained of medication side effects in general, or drowsiness or dizziness specifically."  (Doc. 10, p. 6) (citation omitted). The September 2016 physical capacities form indicates that Ms. Reeves reported medication side effects to Mr. Rogers, but this report is the only objective medical support for Ms. Reeves's testimony that her medications make her drowsy.  The Commissioner explained that the ALJ acknowledged this form but discounted it because Mr. Rogers just wrote down what Ms. Reeves said, and Ms. Reeves's treatment notes from Quality of Life Health Services do not support Ms. Reeves's report.  (Doc. 10, p. 8).  The Commissioner accurately reported that Ms. Reeves denied dizziness during doctor visits.  (Doc. 6-10, p. 78; Doc. 6-13, p. 41; Doc. 6-14, pp. 10, 26, 49, 56, 64, 73).

[9] The ALJ indicated that Dr. Tariq completed a separate physical capacities form for Ms. Reeves. (Doc. 6-3, p. 21).  In fact, Dr. Tariq simply signed the form that Mr. Rogers completed.  (*Compare* Doc. 6-11, p. 8 *with* Doc. 6-14, p. 85).

The ALJ gave some weight to the opinions of Dr. Bailey, an agency psychiatric consultant, and Dr. Heilpern, an agency medical consultant. (Doc. 6-3, p. 21); (*see* Doc. 6-4, pp. 31-32) (Dr. Bailey's psychiatric review technique assessment); (*see* Doc. 6-4, pp. 47-50) (Dr. Heilpern's physical capacities assessment). These doctors recognized that Ms. Reeves "has medically determinable mental and physical impairments that impose significant limitations on her ability to perform the mental and physical demands of work." (Doc. 6-3, p. 21). Neither Dr. Bailey nor Dr. Heilpern examined Ms. Reeves. (Doc. 6-3, p. 21); (Doc. 6-4, pp. 31-32).

After discussing the medical evidence, the ALJ determined that Ms. Reeves's course of treatment, the opinion evidence, and her treatment records do not "reasonably support a finding that the claimant is as physically limited as alleged" and "suggest greater sustained capacity than described by the claimant." (Doc. 6-3, p. 22). The ALJ found that Ms. Reeves "may reasonably experience periodic episodes of pain, discomfort, other symptoms and some physical limitations, but the ALJ concluded that "the records do not support a finding that [Ms. Reeves's] ability to exert herself physically is seriously reduced such that she could not engage in work activity at the level set forth in her residual functional capacity." (Doc. 6-3, p. 22). The ALJ rejected Ms. Reeves's "self-reported physical limitations" as inconsistent with the medical evidence and found that Ms. Reeves's claimed degree

of debilitation is greater "than what objective evidence can support." (Doc. 6-3, p. 22). The ALJ made a similar finding about the claimed severity of Ms. Reeves's mental impairments. (Doc. 6-3, p. 22). In sum, the ALJ found that Ms. Reeves's testimony is "credible only to the extent that it is consistent with the [RFC determination]." (Doc. 6-3, p. 22).

An ALJ "must articulate explicit and adequate reasons" for discounting a claimant's subjective complaints on the basis of objective medical evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Ms. Reeves maintains that the ALJ did not "adequately consider [her] testimony concerning the side effects of her pain medication." (Doc. 9, p. 2).

In *Passopulos v. Sullivan*, 976 F.2d 642 (11th Cir. 1992), the Eleventh Circuit held that when the medical record lacks evidence that a claimant's medication causes side effects, an ALJ is not required to elicit testimony or make findings about side effects. *Passopulos*, 976 F.2d at 648. An ALJ's failure to discuss side effects when a claimant testifies about them but offers little objective support from medical records is not always grounds for remand:

> As for Robinson's alleged medication side effects—which the ALJ did not specifically mention—the ALJ stated that she had considered all of Robinson's symptoms based on the requirements of 20 C.F.R. § 404.1529 and Social Security Ruling 96–4. This regulation specifies that any alleged medication side effects must be considered in evaluating the credibility of a claimant's statements concerning his limitations and acknowledged the various medications that the claimant took. *See* 20 C.F.R. § 404.1529(c)(3)(iv). Furthermore, while Robinson

testified to medication side effects and reported medication side effects once, he also repeatedly declined to report any medication side effects. Therefore, the ALJ did not fail to consider Robinson's medication side effects because she said she was required to do so and because she discredited Robinson's testimony regarding medication side effects when he did not consistently complain of them to doctors.

*Robinson v. Comm'r, Soc. Sec. Admin.*, 649 Fed. Appx. 799, 802 (11th Cir. 2016) (emphasis omitted).

During her hearing, Ms. Reeves reported that her medications caused constant drowsiness and occasional dizziness. (Doc. 6-3, p. 87). Dr. Tariq and Mr. Rogers indicated in the 2016 functional report that Ms. Reeves experiences drowsiness. (Doc. 6-11, p. 8; Doc. 6-14, p. 85). Dr. Tariq and Mr. Rogers did not discuss the frequency of Ms. Reeves's drowsiness or describe its impact on her ability to work. Dr. Tariq and Mr. Rogers did not identify dizziness as a problem. No other medical record indicates that Ms. Reeves mentioned side effects from her medications. Treatment notes from her visits to Quality of Life Health Services do not reflect that she complained about drowsiness, and those records undercut Ms. Reeves's claim about dizziness.

Because the objective medical evidence refutes Ms. Reeves's claim about dizziness and because only one assessment in 2016 identifies drowsiness as a side effect of her medication, the ALJ did not have to make specific findings about side effects. The ALJ did not ignore the one record that contains evidence of medication side effects. The ALJ explained that she gave Mr. Rogers's 2016 assessment little

weight because Mr. Rogers, as a nurse practitioner, was not an acceptable medical source.  (Doc. 6-3, p. 21).  Dr. Tariq did not separately assess Ms. Reeves; he simply signed Mr. Rogers's assessment as a supervising physician.

To the extent the ALJ committed error in not discussing Ms. Reeves's claimed side effect of drowsiness, that error is harmless because the ALJ explained generally why she discounted the one record containing evidence of drowsiness, and there is no other objective medical evidence to support Ms. Reeves's testimony.  *See Mabrey v. Comm'r, Soc. Sec. Admin.*, 724 Fed. Appx. 726, 727 (11th Cir. 2018) ("Irrelevant errors are harmless and do not require reversal or remand.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *cf. Holley v. Chater*, 931 F. Supp. 840, 850 (S.D. Fla. 1996) (A claimant's testimony that "medication makes him 'dizzy and drowsy'. . . . is insufficient to support a finding of disability.") (citation omitted).

*Medical Evidence*

Mr. Reeves maintains that remand is appropriate because the ALJ did not "state with at least some measure of clarity the grounds" for rejecting the medical opinions of Drs. Prince and Teschner.  (Doc. 9, p. 2); (Doc. 9, p. 32) (citing *McClurkin v. Comm'r, Soc. Sec. Admin.*, 625 Fed. Appx. 960, 962 (11th Cir. 2015)).  Ms. Reeves relied on the opinions of Drs. Prince and Teschner when she filed her previous application for benefits.  During the administrative hearing in this case, the

ALJ observed that res judicata applied to Ms. Reeves's reliance upon the medical

source statements that were part of the *Reeves I* record:

> As far as your evidence in this case that you've got multiple medical
> source statements that are prior to a prior decision that have been upheld
> both by the Appeals Council and the Federal District Court. Those – as
> far as this case is concerned, that evidence is res judicata and has no
> bearing, as I can see, in this case. So there's that one statement from a
> consultative examiner that's out there pending, the Court, I believe, did
> not exclude, but beyond that, most of the evidence I see in a lot of the
> new stuff that's been put i[n] is going to be covered under that prior
> decision, but I just want you to be aware of that. I'm sure you were
> aware of that.

(*See* Doc. 6-3, p. 79); *see also* 42 U.S.C. § 405(h) ("The findings and decision of the

Commissioner of Social Security after a hearing shall be binding upon all individuals

who were parties to such hearing.").

"The principles of *res judicata* are applied to give finality to the decisions of

the Social Security Administration, and to prevent the Secretary from reaching an

inconsistent result in a second proceeding based on evidence that has already been

weighed in a previous hearing." *Gallart v. Apfel*, No. 8:98CV762-T-17(E), 2000

WL 782955, at *2 (M.D. Fla. June 13, 2000). "The heart of the issue . . . is whether

the second ALJ relied upon similar evidence regarding similar issues in making his

decision." *Gallart*, 2000 WL 782955, at *3.[10]

---

[10] The Commissioner found that Ms. Gallart could perform sedentary jobs in the first disability
case and light in the second one. *Gallart*, 2000 WL 782955, at *1. The district court remanded
Ms. Gallart's second case "for the Commissioner to address whether that has been an improvement
in [her] residual functional capacity" from sedentary to light.

In *Reeves I*, the district court explained why substantial evidence supported the ALJ's decision to discount Dr. Prince's opinion. Dr. Prince's status as a non-practicing physician in Alabama created ambiguity about whether he qualified as an acceptable medical source. *Reeves I*, 2016 WL 782955, at *4. The ALJ in this case made the same point. (Doc. 6-3, p. 20). Whether Dr. Prince has a medical license matters because an ALJ may consider evidence from a non-medical or other source, but does not have to give it special weight. *Reeves I*, 2016 WL 782955, at *4; *see also* 20 C.F.R. § 404.1527 (framework for evaluating opinion evidence for claims predating Mar. 27, 2017).

Concerning the first ALJ's rejection of Dr. Prince's opinion, the district court explained:

> The ALJ discussed inconsistencies between Dr. Prince's evaluation and the record. For instance, the ALJ noted that Dr. Prince's opinion seemed to be driven by his belief that Plaintiff was at a high risk of falling and injuring herself; however, when questioned during the hearing about falling, Plaintiff could only think of one instance involving her falling—in 2007, prior to her back surgery. (R. 36, 66). Additionally, Dr. Prince's single examination, or "snapshot" of Plaintiff's condition, was inconsistent with the treatment notes of Mr. Rogers, Plaintiff's longitudinal treatment provider. (R. 35-36, 303-304, 313, 316, 318-319, 482-484, 492, 497). The ALJ considered multiple factors when weighing the importance of Dr. Prince's opinion; he did not limit his considerations to the fact that Plaintiff's attorney referred Dr. Prince to Plaintiff.

*Reeves I*, 2016 WL 782955, at *5. Thus, the ALJ in *Reeves I* provided examples of contradictory evidence when discounting Dr. Prince's opinion.

Here, the ALJ should have provided specific reasons for not accepting Dr. Prince's opinion, SSR 16-3p, but the grounds for discounting Dr. Prince's opinion have not changed since *Reeves I*. Consistent with *Garrett*, because of the res judicata effect of *Reeves I*, remand is unnecessary to require the ALJ to provide a detailed explanation for her treatment of Dr. Prince's opinion. (*See also* Doc. 6-14, pp. 45, 50) (indicating during December 2015 office visit that "patient has not fallen in the last year").

The ALJ in *Reeves I* did not evaluate Dr. Teschner's opinion because the opinion was not available then. *Reeves I*, 2016 WL 782955, at *2. Dr. Teschner's opinion was available to the Appeals Council, and the Appeals Council found that Dr. Teschner's opinion "did not change the results of the ALJ's decision, and it was not chronologically relevant to the ALJ's decision . . . ." *Reeves I*, 2016 WL 782955, at *2. The district court found that Dr. Teschner's opinion was chronologically relevant, but the "report did not present new, material evidence in that it did not provide 'objective medical evidence which the ALJ previously had found to be wanting.'" *Reeves I*, 2016 WL 782955, at *7 (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)). Consequently, the district court declined to remand "for the ALJ to consider a new independent medical examination from Dr. Teschner." *Reeves I*, 2016 WL 782955, at *4.

As with Dr. Prince's opinion, remand for the ALJ to provide details about her reasons for giving little weight to Dr. Teschner's opinion is not necessary in light of *Reeves I*. The district court's rationale for not remanding in *Reeves I* applies persuasively, if not equally, here. Dr. Teschner formed her opinion based on the same objective evidence which the ALJ found lacking in *Reeves I*.

The Court notes that there is objective medical evidence in the record that undermines Dr. Prince's and Dr. Teschner's opinions. Specifically, during her visits at Quality of Life Health Services, on a zero to ten scale, Ms. Reeves reported mostly zeros and, with one exception in May 2013, never more than a five between July 2010 and March 2015. (Doc. 6-13, p. 57; 6-14, pp. 20, 28-29).[11] In the 12 months preceding her alleged onset date of August 2014, Ms. Reeves reported pain mainly at zero out of ten with one two and one five. (Doc. 6-13, p. 57). These medical records undermine Ms. Reeves's testimony that her pain was a seven during the day and sometimes a ten at night. (Doc. 6-3, pp. 88-89). Ms. Reeves has not shown that requiring the Commissioner to provide a detailed discussion of Dr. Prince's or Dr. Teschner's opinion would change the outcome in this case. *Cf. Mabrey*, 724 Fed. Appx. at 727 (harmless error rule). Therefore, substantial evidence supports the ALJ's decision, and the Court will not remand for additional discussion of these opinions from one-time examiners.

---

[11] In May 2013, Ms. Reeves reported a pain score of nine. (Doc. 6-13, p. 57).

*Vocational Expert Testimony*

Ms. Reeves contends that the ALJ's reliance upon the vocational expert's testimony requires remand because the ALJ "did not fully state [Ms. Reeves's] impairments and limitations." (Doc. 9, p. 36). Ms. Reeves fully credits the opinions of Drs. Prince and Teschner when raising this issue. (Doc. 9, pp. 36-37). Because the ALJ's credibility determination and treatment of Drs. Prince's and Teschner's opinions are supported by substantial evidence, the ALJ did not have to accept the vocational expert's answers to hypothetical questions incorporating Dr. Prince's or Dr. Teschner's limitations. (Doc. 10, pp. 16-17); *see Crawford*, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."). Therefore, on the administrative record in this case, the ALJ appropriately relied on the vocational expert's testimony in concluding that Ms. Reeves was capable of working as a surveillance system monitor, cuff folder, and lens inserter given her residual functional capacity.

## V. CONCLUSION

The Court denies Ms. Reeves's motion remand and affirms the Commissioner's decision.

**DONE** this 18th day of September, 2019.

MADELINE HUGHES HAIKALA
UNITED STATES DISTRICT JUDGE